UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

KRISTI THOMAS o/b/o )
A.S.N. )
 )
v. ) NO. 2:05-CV-304
 )
JO ANNE B. BARNHARDT, )
Commissioner of Social Security )

MEMORANDUM OPINION

The plaintiff Kristi Thomas has filed a motion for summary judgment on behalf of her son to obtain judicial review of the final decision of the defendant Commissioner of Social Security, Jo Anne B. Barnhardt, to deny his application for supplemental security income under the Social Security Act. The defendant has also filed a motion for summary judgment.

A.S.N. was born in 1989 and was 15 years old at the time of his administrative hearing. [Tr. 15]. He completed eighth grade in special education classes. [*Id*.]. A.S.N. alleges disablity as of December 17, 1989, from learning problems, dyslexia, and an inability to read at his grade level. [*Id*.]. Based upon a finding that his impairments did not meet or medically equal the criteria of any of the listed impairments of Appendix 1, Subpart P, Regulations No. 4, the Administrative Law Judge [ALJ] found that A.S.N. was not disabled as defined by

the Social Security Act. [Tr. 17].

The testimony of A.S.N.'s mother, Ms. Thomas, was received into evidence at his administrative hearing held on April 21, 2005. [Tr. 213-21]. Ms. Thomas testified that she was A.S.N.'s biological mother and he was currently 15 years old and in the eighth grade. [Tr. 213-14]. Ms. Thomas first noted problems with her son in kindergarten. [Tr. 213]. A.S.N. was held back in kindergarten as well as first grade. [Tr. 214]. He is currently in special education classes as well as regular classes. [*Id*.]. In the regular classes, A.S.N. has a teacher's aide. [*Id*.]. Ms. Thomas indicated that some of her son's problems include comprehension, reading, and sound conceptualization. [Tr. 214-15]. A.S.N. reads on a fourth grade level, performs math at between a fifth and sixth grade level, and writes at a little under a fourth grade level. [Tr. 215-16]. Almost all of A.S.N.'s academic classes are through special education. [Tr. 217]. Ms. Thomas testified that her son would be promoted to ninth grade at the end of the school year. [*Id*.]. A.S.N. becomes very frustrated with his school work. [Tr. 218]. He has one good friend but mainly stays in the house. [*Id*.]. He is frustrated "all the time" with activities at home. [Tr. 219].

The ALJ ruled that A.S.N. was not disabled because his severe impairments of borderline intellectual functioning and a learning disability did not meet or

2

medically equal the criteria of any of the listed impairments of App. 1, Subpt. P, Regulations No. 4. [Tr. 17].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

For a person younger than 18, disability will be found if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(I). There is a three-step process for determining if an impairment results in marked or severe functional limitations. 20 C.F.R. § 416.924(b)-(d). First, if a child is engaged in substantial gainful activity, disability cannot be found. Second, if a child's impairment(s) are not severe (causing no more than minimal functional limitations), disability cannot

3

be found.  Last, if a child's impairment(s) do not meet, medically equal, or functionally equal the listings in 20 C.F.R. §404, Subpt. P, App. 1, disability cannot be found.  To determine if an impairment functionally equals the listings of 20 C.F.R. §404, Subpt. P, App. 1, functioning in six areas is considered: 1.) acquiring and using information; 2.) attending and completing tasks; 3.) interacting and relating with others; 4.) moving about and manipulating objects; 5.) caring for yourself; and 6.) health and physical well-being.  20 C.F.R. § 416.926a(a)-(b1).  If a child's impairments result in "marked" limitations in two of these areas or an "extreme" limitation in one area, the impairments functionally equal the listings, and the child will be found disabled.  20 C.F.R. § 416.926a(d).      Ms. Thomas requests summary judgment and challenges the ALJ's finding that A.S.N.'s intellectual functioning level was not disabling.  A.S.N. had argued his intellectual functioning (mental retardation) met, medically equaled, or functionally equaled listing 112.05.  According to the ALJ, however, he had borderline intellectual functioning.  [Tr. 19].

Thus, the first step is to consider if A.S.N. was engaged in substantial gainful activity.  This court agrees with the ALJ 's finding that A.S.N. has not engaged in substantial gainful activity since the alleged onset of his disability.  [Tr. 19].

4

The second step is to consider whether A.S.N.'s alleged impairment of mental retardation was severe (causing more than minimal functional limitations). Listing 112.05 of 20 C.F.R. §404, Subpt. P, App. 1 for mental retardation states that the "required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied." A.S.N. argues he meets the requirement of section D, "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." Over the years, A.S.N. has tested at various IQ levels. In July 1997, A.S.N. obtained a verbal IQ score of 69, a performance IQ score of 77, and a full scale IQ score of 70. [Tr. 185]. In May 2000, A.S.N. obtained a verbal IQ score of 80, a performance IQ score of 89, and a full scale IQ score of 83. [*Id.*]. The examiner indicated these results placed A.S.N. in the "low average classification of overall intellectual functioning." [Tr. 183]. In July 2004, A.S.N. took another IQ test, having a verbal IQ score of 65, a performance IQ score of 77, and a full scale IQ score of 69, which places "him in the mild mental retardation range of intellectual abilities." [Tr. 196].

Pursuant to 20 C.F.R. §404, Subpt. P, App. 1, § 112.00D (10), "IQ test results must also be sufficiently current for accurate assessment under 112.05 . . . . IQ test results obtained between ages 7 and 16 should be considered current for 4

5

years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above." A.S.N. was aged seven or older when each of these tests was administered. Under the above language, then, A.S.N.'s IQ results from July 1997 and May 2002 are no longer current because they were obtained more than two years ago. The only current results are those from July 2004 when A.S.N. scored 65 on the verbal IQ section, 77 on the performance IQ section, and 69 on the full scale IQ section. [Tr. 196]. A.S.N. has, thus, met the first criterion of listing 112.05 because he has a "valid verbal, performance, or full scale IQ of 60 through 70."

    A.S.N. must next demonstrate that he has a "physical or other mental impairment imposing an additional and significant limitation of function" to meet the requirements for mental retardation. A.S.N. has not made any allegations of a physical impairment. He does allege that he has the additional mental impairments of dysthymia and dyslexia.

    First, the ALJ found that A.S.N.'s dysthymic disorder did not result "in more than minimal ongoing limitations for any twelve consecutive months" and was therefore not severe. [Tr. 16]. The ALJ noted that A.S.N. had not sought and did not require mental health treatment. [*Id*.]. In addition, his description of his activities of daily living–bathing and dressing himself, going to the grocery store,

helping with chores, mowing the lawn, watching television, playing video games, enjoying fishing, and riding his bike–were not indicative of an ongoing mental disorder. [*Id*.]. Steven Lawhon, Psy.D., diagnosed A.S.N. with dysthymia in July 2004 and indicated he might benefit from medication and/or psychological services. [Tr. 197]. In that same month, Dr. Larry Welch, Ed.D., also indicated A.S.N. had dysthymia but that it was not severe enough to meet, medically equal, or functionally equal the listings. [Tr. 198]. Dr. Welch indicated A.S.N.'s dysthymia was "less than marked." [Tr. 200]. In September 2004, Karen Lawrence, Ph.D., also indicated that the dysthymia was not severe enough to meet, medically equal, or functionally equal the listings. [Tr. 204]. Dr. Lawrence found no evidence that the dysthymic disorder resulted in severe limitations. [Tr. 209]. Based on the above evidence, the ALJ's finding that A.S.N.'s dysthymia was not severe was made on substantial evidence.

Second, the evidence of A.S.N.'s alleged dyslexia is slim. His extended resource teacher explained in May 2004 that he had "some indications of dyslexic symptoms." [Tr. 124]. However, while A.S.N.'s reading difficulties were often noted in the medical record, not another teacher or professional who worked with A.S.N. mentioned concerns about dyslexia. [Tr. 149, 151, 152, 173, 178]. There is simply no evidence in the medical record before this court that A.S.N. has

7

dyslexia.

Therefore, although A.S.N. satisfied the IQ criterion of listing 112.05, he is unable to satisfy the "physical or other mental impairment imposing an additional and significant limitation of function" criterion. Therefore, the ALJ's conclusion that A.S.N. was not mentally retarded was made on substantial evidence.

Last, if a child's impairments do not meet, medically equal, or functionally equal the listings in 20 C.F.R. §404, Subpt. P, App. 1, disability cannot be found. To determine if an impairment functionally equals the listings of that regulation, functioning in six areas is considered: 1.) acquiring and using information; 2.) attending and completing tasks; 3.) interacting and relating with others; 4.) moving about and manipulating objects; 5.) caring for yourself; and 6.) health and physical well-being. 20 C.F.R. § 416.926a(a)-(b1). If a child's impairments result in "marked" limitations in two of these areas or an "extreme" limitation in one area, the impairments functionally equal the listings, and the child will be found disabled. 20 C.F.R. § 416.926a(d).

The ALJ determined that A.S.N. had less than marked limitations in the areas of acquiring and using information and attending and completing tasks. [Tr. 18]. In the four remaining areas, the ALJ found there was no evidence of any significant limitations. [*Id.*]. A.S.N. only challenges the ALJ's conclusions

concerning the first two areas, claiming that he has at least marked if not extreme limitations in those domains.

Regarding acquiring and using information, A.S.N.'s reading and written expression levels of functioning are in the second grade range. [Tr. 124]. According to a form completed by his extended resources teacher in May 2004, A.S.N. has "a very serious problem" in reading and comprehending reading material as well as expressing ideas in written form. [Tr. 125] According to his Individualized Education Plan, A.S.N. functions more than three years below grade level in the areas of reading and written expression. [Tr. 149]. Dr. Welch found in May 2004 that A.S.N. had a marked limitation in the acquiring and using information category, but he still found that A.S.N.'s impairment did not functionally equal a listing. [Tr. 200, 202]. Dr. Lawrence reached the same conclusion in September 2004. [Tr. 206, 208]. Based on the above evidence, the ALJ's finding that A.S.N. had less than a marked limitation in the area of acquiring and using information was not based on substantial evidence. This court finds that he has a marked limitation in this area.

In the area of attending to and completing tasks, Robert Spangler, Ed.D., stated in May 2000 that A.S.N.'s "concentration on assessment tasks can be

considered as erratic or variable concentration." [Tr. 183]. His extended resources teacher indicated in May 2004 that A.S.N. had "an obvious problem" with carrying out multi-step instructions, completing class/homework assignments, and completing work accurately without careless mistakes. [Tr. 131]. The teacher relayed that A.S.N, "has shown significant gains in independent work habits this year but still requires frequent refocusing and reminders to stay on task." [*Id*.]. A school counselor indicated in December 2005 that A.S.N. was "on task." [Tr. 178]. Dr. Lawhon stated that A.S.N. did not "display specific evidence to support a diagnosis of attention deficit disorder" during their July 2004 meeting. [Tr. 195]. According to Dr. Lawhon, his ability to sustain concentration and persistence was "mildly limited." [Tr. 196]. Given the above evidence, the ALJ's finding that A.S.N. was not significantly limited by his ability to attend to and complete tasks was based on substantial evidence.

Consequently, A.S.N. only has one marked limitation out of the six areas. He, therefore, does not have an impairment that functionally equals the listings and is not disabled.

After careful consideration of the entire record of proceedings related to this case, Ms. Thomas' motion for summary judgment will be denied, the defendant's

10

motion for summary judgment [Doc. 23] will be granted, and this action will be dismissed.

An appropriate order will follow.

ENTER:

> s/J. RONNIE GREER
> UNITED STATES DISTRICT JUDGE